In the Matter of " Harold Bender ", an Infant.*

Domestic Relations Court of the City of New York, Children's Court,
Bronx County, July 9, 1953.

*Edward H. McAloon* for parents.

Panken, J.  On the 27th of April, 1953, a petition was filed alleging that the child herein was a delinquent in that he was in possession of a thirty-two calibre Italian Baretta automatic gun with a cartridge in one of the chambers.  On that day a justice of this court adjudged the child to be a delinquent after a complete hearing.

An investigation was had by the probation department of the Domestic Relations Court of the City of New York.  A written report was presented to a justice of this court, on or about the 18th of May, 1953.  The mother of the child appeared on that day and told the court that since the boy had been paroled to her he had become an increasing problem at home and at school, and she had applied to the youth board for their advice; thereupon, the boy was admitted into Bellevue Hospital because of the assistance by the youth board.  (At the time the youth board intervened the child was a ward of the court and the youth board knew that fact.  It was imparted to them by the mother of the child.  It is axiomatic that no agency is empowered to supersede the court in relation to a child under its jurisdiction.  It is a good rule; it is nothing more than common sense.  The experience of man has taught him that " too many cooks spoil the broth."  The youth board had no right to interfere.  It did more harm than good.)  While in Bellevue Hospital it is

* Names used herein are fictitious for the purposes of publication.

evident from the report of that institution that the boy had shown many symptoms of disturbance. He was a serious problem. The report in part reads: "On admission to the hospital H was greatly disturbed and his clothes had to be removed in order to prevent attempts at escape. He appeared markedly fearful and he handled his fear by bluster and threats. In a day or two the boy appeared to accept his placement. He was, however, always very much on guard in the presence of members of the staff. * * * He was frequently involved in unacceptable activity in the nature of bullying, destructive behavior and sex play." The report points out that " the boy had profound feeling of inadequacy and impotency and much of his feeling is oriented towards reassuring himself of his potency." The report of Bellevue Hospital was submitted to me on June 2, 1953.

After spending some time with the child the boy was remanded to Youth House to accord probation officer Demski an opportunity to confer with the directors of agencies that I believed would serve well in a rehabilitative manner for this child. The agencies, however, that I believed would help this boy found themselves unable to accept him. Sometimes rejection of a child by an agency seems to the court to be unjustifiable. Children who need no help from qualified professional workers are never referred to an agency for help. It is for the child who falls by the wayside and is in need of help that the court solicits help from a qualified agency. Children who are not neglected or delinquent need no help from agencies organized to help delinquent and neglected children. Unfortunately, the requirements of some agencies or schools are such which make me feel that they desire a Phi Beta Kappa key before they will accept a child. Yet, it is understandable that agencies would want the best type of child rather than the worst as members of the community they set up. But what are we to do with the unaccepted? They are the ones who are really in need.

To protect our child life, which in the last analysis is our future, the city and State should provide for the placement (I do not like the term " commitment " when children are involved) of delinquent and neglected children in wholesome surroundings not unlike real homes, and provide training and other care required for their rehabilitation to the end that the delinquent is protected against himself and children with whom he may come in contact and influence them on to delinquency; and that the neglected child may have at least a modicum of security.

That is a primary governmental responsibility, a duty. The care of our children is the basis of our future. The child delinquent will be the delinquent citizen. Government is as effective as the intelligence of the citizenry commands, as bad as the citizenry tolerates.

The probation department was not in a position to obtain admission of this boy into a school that I thought would be best for him, and here it should be said and it is said without qualifications that the New York State Training School for Boys is an excellent institution, well staffed and well able to care for any child who is committed to them. However, the population in size is much beyond what is desirable for a school of that type. Indeed, it is often full to capacity and a long line of children are on the waiting list.

This boy was committed by me to the New York State Training School for Boys. Execution of the commitment, however, was stayed.

The power of the court to stay the execution of a commitment to a State school or a private school has been questioned. Section 83 of the Domestic Relations Court Act of the City of New York provides in part as follows: "subdivision (a). Suspend judgment; (c). Commit the child to the care and custody of a suitable institution maintained by the state or any subdivision thereof, or to the care and custody of a duly authorized association, agency, society or institution; (f) Render such other and further judgment or make such other order or commitment as the court may be authorized by law to make."

A finding in the Children's Court Division of the Domestic Relations Court of the City of New York may be regarded as a judgment. It can never be regarded, in cases where delinquency is alleged, as a conviction. A conviction carries with it a sentence. A finding of delinquency excludes the possibility of a sentence. Children are not sentenced. A sentence is punishment. Webster's New International Dictionary defines sentence to be a "doom; * * * In criminal and ecclesiastical courts, a judgment passed by a court or judge on a person on trial as a criminal or offender * * * the order by which the court imposes punishment or penalty upon a person found guilty." Sentence is defined in Black's Law Dictionary as follows: "The judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution, awarding the punishment to be inflicted." A sentence is never imposed upon a child delinquent. Rather a means is sought to rehabilitate,

re-educate, instill social responsibility, moral obligation and decency to the end that the delinquent may become a valued citizen of the community. Children regard a commitment to a school, which is done for their own good, as punishment. It is the duty of the judge, the probation officer, the director of the school and the personnel to erase from the mind of the child any idea that he is being punished. A feeling of punishment will stand in the way of rehabilitation.

This court has the power to commit a child to an institution or a school under subdivision (c) of section 83. It also has the power to stay execution of the commitment. The statute provides that judgment may be suspended upon a child. What that means, I do not know. Once there is a finding, the child can either be paroled, placed on probation, or discharged. Since no sentence can be imposed upon a child, there can be no suspension of a judgment. The judgment is the finding upon the petition. Children are not indicted. Informations are not presented against them. The philosophy of the law establishing Children's Courts requires that a petition be presented to the court rather than a charge, which in effect is a prayer to the court that the child be dealt with in a manner which will bring about a change of attitude, a sense of moral and social responsibility, recognition of obligation to his fellows; indeed, to change the boy from a delinquent to a good youngster.

In the *Matter of Anonymous* (281 App. Div. 1061) the Appellate Division of the State of New York, Third Department, in a *Per Curiam* memorandum held that a stay of execution of a commitment may be ordered; it reflects my own opinion that such a stay may very well serve the purposes for which Children's Courts have been created in the State of New York and elsewhere.

This court has on occasion stayed execution of commitment of children to either State schools or schools maintained by private agencies so that the parents of the child be afforded an opportunity to exert the good influence which parents should have upon their children; moreover, to accord the probation department of the Children's Court, whose function it is to rehabilitate children, the opportunity to work with and help their charges. In instances where a child has strayed from decency and good ways and actually engaged in delinquent conduct, this court has found that such children can and in most instances are rehabilitative. Most of the children who come into court as delinquents are really neglected children. In any event, the

neglect of them was the starting point of delinquency. They are victims, sinned against more than sinners. Lack of guidance, sometimes misguidance and very often a feeling of rejection by a child are the causative factors for aggressions by children amounting to delinquency. Children need not be rejected to feel rejected. When there is rejection or a feeling of rejection an inferiority complex is likely to develop in the child which will cry out for compensation. Compensation is aggression. Each child wants to be singled out, wants to be loved, and the love that a child understands is the interest of parents in him and the interests of others in his well-being. A stay of execution of judgment to a State school will give the probation officer an opportunity not only to show his own interest in the child but to develop an interest in the parents for the child. When interest is not forthcoming to a child he feels rejected, even though it is not so.

Parents have a duty to love children. Sometimes even though they love their children, they fail to convince the child of that fact. Then some parents believe that the love for their children is expressed only in furnishing all his material needs or even material luxuries. That, however, is not the love that the child wants, nor is it helpful. The failure to give a child a feeling of interest in him, in his well-being, in his ambitions, will stand in the way in the development of moral stamina; failure to do this is worse than denying a child clothing or even food at one time or another.

No child is born to be a delinquent. To hold that a child is born to be a delinquent is a libel upon what most people in the world believe in — the intelligent direction by an intelligent force of the world. No child is born into the world to be good either, except that all people should be good. A child is as good as the parent blazes the path for him and the community makes possible, and as bad as the parent and society fail him.

It is my judgment that the best interests of this child will be served by staying the execution of the commitment for six months, and an opportunity accorded thereby to the probation officer, the parents, and others who are interested in the child to revamp his thinking, his emotions, his ambitions, which at this time are evidently centered in the " Pythons ", a gang of which he is a member. Execution stayed.